# LEVIN-EPSTEIN & ASSOCIATES, P.C.
---
60 East 42nd Street • Suite 4700 • New York, New York 10165
T: 212.792.0048 • E: Jason@levinepstein.com

October 3, 2023

*Via ECF*
The Honorable J. Paul Oetken, U.S.D.J.
U.S. District Court, Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *Rivera v. 787 Coffee LLC et al*
                __Case No.: 1:22-cv-01596-JPO__

Dear Honorable Judge Oetken:

      This law firm represents Plaintiffs Angel Rivera, Matt Rosenbaum, Michele Signorile-Martino, Sheridan Plunkett, Travis Reilly (a/k/a Eileen Reilly), Kienan Ludke, Maya Keating, Isis Gamble, and Ty Barrett[1] (collectively, the "Plaintiffs") in the above-referenced action. This letter is submitted pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), seeking approval of the enclosed Settlement Agreement, which provides for a total settlement amount of $130,000.00 and the dismissal of Plaintiffs' claims with Prejudice.

      A copy of the executed Settlement Agreement is attached hereto as Exhibit "A".

      A Stipulation of Dismissal with Prejudice is being filed simultaneously with this letter motion, and the parties respectfully request that the court So-Order the Stipulation.

## I.    Procedural History.

      This is an action under the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL") brought by nine (9) individuals against their former employers for violations of federal and state wage-and-hour laws.

      Defendant 787 Coffee LLC (the "Corporate Defendant"), and Brandon Pena (the "Individual Defendant", and together with the Corporate Defendant, the "Defendants") operate a twenty-three (23) coffee shops[2], two (2) co-working spaces; one (1) experiential coffee lab, and one (1) coffee farm,[3] collectively known as "787 Coffee".

---

[1] Also known as Ty Hawthorne.

[2] As of April 20, 2023 (*i.e.,* the parties' second virtual mediation), Defendants had **twenty-seven (27)** coffee shops. Since then, Defendants have closed at least **four (4)** 787 Coffee locations. *See* (i) https://www.787coffee.com/new-york-coffee-shop-locations; (ii) https://www.787coffee.com/coffee-shops-new-jersey-locations; (iii) https://www.787coffee.com/787-coffee-shop-puerto-rico-locations; and (iv) https://www.787coffee.com/787coffeeshopsintexas (last accessed July 31, 2023).

[3] *See* https://www.haciendailuminada.com/our-coffee-growing-processing-roasting-methods (last accessed July 31, 2023).

1

According to the operative complaint filed on February 25, 2022 [Dckt. No. 1] (the "Complaint", or the "*Compl.*"), Plaintiffs, who worked as baristas and shop leaders[4] at 787 Coffee, were never paid overtime, despite regularly working in excess of forty (40) hours per week.

Certain Plaintiffs were also paid less than the prevailing minimum wage, in effect, during the relevant period.

Moreover, it is alleged that Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' tipped wages. Although the exact figure is known, it is estimated that Defendants unlawfully appropriated between $300 in tipped wages, per barista, per week.

Defendants deny any liability, committing any wrongdoing or violating any legal duty with respect to Plaintiffs, including with respect to Plaintiffs' employment, including Plaintiffs' pay while in Defendants' employ. Defendants specifically deny any potential liability and disputes Plaintiffs' claimed days and hours worked and the amount of purported damages listed in Plaintiffs' calculation.

During the course of this action, Defendants produced time and pay records reflecting Plaintiffs' working hours and the amount of compensation they received. Assuming that Defendants' time and pay records are accurate, Plaintiffs were sufficiently paid.

Although there is a bona fide dispute between the parties as to the merits of Plaintiffs' wage and hour claims, Defendants agreed to pay Plaintiffs more than they believe is due under the law. Both parties have agreed to settle as a result of reasonable strategic and financial considerations.

On or around August 7, 2023, after multiple rounds of negotiations following an in-person settlement conference held before Your Honor, the Court transmitted a mediator's proposal via email on August 7, 2023, at approximately 4:45 p.m.

On August 8, 2023, via email transmitted at approximately 2:55 p.m., the Court announced that the parties reached a resolution in principle to settle this matter for a total sum of $130,000.00 (the "Settlement Amount") to be paid out in accordance with the terms of the mediator proposal, and accompanying Settlement Agreement.

The settlement is objectively fair, reasonable, and the product of arm's length negotiations between experienced counsel. For these reasons and those set forth in further detail below, the settlement should be approved.

**II.     The Settlement Agreement is Fair and Reasonable.**

To determine whether an FLSA Settlement Agreement should be approved as fair and reasonable, courts in the Second Circuit consider the totality of the circumstances, including the following factors:

---

[4] Plaintiffs Rivera, Signorile-Martino, Barrett and Reilly primarily worked as a shop leaders at 787 Coffee. The remaining Plaintiffs all primarily worked as baristas.

(1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, 2013 WL 4427917, at *2 (S.D.N.Y. 2013) (citation omitted).

### A. The Settlement Sum is Substantial and Fair Given the Plaintiffs' Range of Recovery.

The first factor articulated in *Wolinsky* examines "the Plaintiff's range of possible recovery." *Wolinsky,* 900 F.Supp.2d 332, at 335.

The Settlement Agreement satisfies this prong because Plaintiffs' proposed ultimate recovery represents approximately 99.98% of Plaintiffs' estimated maximum recovery for unpaid wages. See *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171 at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA Plaintiff's maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA Plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery).

The method and formula for the derivation of the Plaintiffs' reasonable range of recovery assumes the following, after considering Defendants' documentation of hours worked and compensation received:

(i) Plaintiffs would have a high likelihood of recovery for the allegations of unpaid minimum wages, given that Defendants' document production substantiated Plaintiff's overtime, minimum wage, and tip theft claims.

(ii) Each Plaintiff's estimated average unpaid gratuities totaled $300, per week of their employment.

Taking these assumptions into account, the undersigned computed that the alleged unpaid wages yielded the aggregate amount of $129,975.96. The undersigned yielded this amount by subtracting Plaintiffs' assumed lawful wages, by Plaintiffs' paid wages. Defendants sharply dispute that Plaintiffs are owed any unpaid wages.

The Settlement Agreement requires that Defendants pay a settlement sum in the amount of $130,000.00, with the first installment of $30,000 due on or before the date that is sixty (60)

3

days[5] of the execution of the Settlement Agreement, and the remaining $100,000 due in sixteen (16) equal monthly installment payments. After such attorneys' fees and costs, Plaintiffs will receive payments totaling $86,373.06, in the aggregate.

Plaintiffs believe that the Settlement Amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of additional discovery.

The number of hours Plaintiffs worked was a seriously contested issue that made the settlement of the claims asserted in this action difficult. The parties engaged in informal discovery to address various issues related to liability, damages, and Defendants' ability to satisfy a judgment.

Given the risks these issues presented, the Settlement Amount is reasonable.

### B.  The Settlement Agreement Avoids the Incurrence of Additional Expenses.

The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor also weighs in favor of *Cheeks* approval.

The Settlement Agreement resolves bona fide disputes over sharply contested issues, namely the total number of hours worked by Plaintiffs. In that regard, Defendants assert that Plaintiffs worked substantially fewer hours than they allege. During the course of settlement negotiations, Defendants produced time reports and paystubs. If the trier of fact determined that the time reports and paystubs were accurate, then Plaintiffs worked fewer hours than alleged, resulting in a diminished recovery. In fact, there is the possibility they would not be owed any wages. Proceeding to trial would consume significant amounts of time and resources, and Plaintiffs face the hurdles of rebutting Defendants' time records for certain periods of time. *See Garcia v. Jambox, Inc.,* 2015 WL 2359502, at *3 (S.D.N.Y. 2015) (Plaintiff's burden on the rebuttable presumption is high where Defendants have produced records).

The parties conducted a total of eleven (11) depositions in this action. The continued litigation of this case would necessitate a jury trial. The associated costs and the continued prosecution of this case would necessitate the incurrence of substantial attorneys' fees and costs on both sides. Accordingly, it is in the interests of both parties to effectuate a settlement.

### C.  The Seriousness of the Litigation Risk Faced by Plaintiffs is High.

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id at 335.* This factor also weighs heavily in favor of settlement.

---

[5] Plaintiffs' counsel emailed Defendants' counsel a copy of the fully executed Settlement Agreement on October 3, 2023. Therefore, the initial payment of $30,000 will be do on or before December 2, 2023.

Both parties face serious litigation risks as to both liability and damages, *to wit*: prevailing on the amount of hours allegedly worked, and the amount of alleged unpaid wages owed.

Defendants furnished time records and payroll records for the relevant period. Plaintiffs, in order to succeed on the merits for this period, would have to rebut the presumption that Defendants paid Plaintiffs in accordance with NYLL and/or the FLSA. Where, as here, Plaintiffs have produced no documentation of their hours worked or compensation received for this period, and Defendants have produced records, Plaintiffs' burden on this rebuttable presumption is high. *Gyalpo v. Holbrook Dev. Corp.*, 577 B.R. 629 (E.D.N.Y. 2017); *Garcia v. Jambox, Inc., supra* (S.D.N.Y. 2015).

Accordingly, the seriousness of the litigation risks on the part of both parties' continued prosecution of the case weighs in favor of settlement.

### D. The Settlement Agreement is a Fair Compromise Accomplished Between Experienced Counsel Following Court-Ordered Settlement Conference.

The fourth *Wolinsky* factors examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel" as well as the "possibility of fraud or collusion." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor weighs heavily in favor of *Cheeks* approval.

The contested issues, and arms-length negotiation by counsel demonstrate there was no fraud or collusion. *See Meigel v. Flowers of the World, NYC, Inc*., 2012 WL 70324, at *1 (S.D.N.Y. 2012) ([T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement). *Abrar v. 7-Eleven, Inc*., 2016 WL 1465360, at *2 (E.D.N.Y. 2016). Additionally, Plaintiffs are satisfied with the settlement amount and voluntarily and willingly entered into the agreement.

Levin-Epstein & Associates, P.C. has obtained favorable decisions in wage-and-hour cases that have set precedent in this area of law. *See Singh v. Lintech Elec., Inc.,* 2021 WL 1062533, at *3 (E.D.N.Y. 2021) (securing dismissal of fraudulent conveyance actions, and cancellation of *lis pendens*, filed in FLSA action); *Suarez et al v. Brasserie Felix, Inc. et al*, Case No. 19-cv-07210, Dckt. No. 59 (hired by Plaintiffs' counsel to facilitate resolution in bankruptcy proceedings and secured $800,000 settlement on behalf of twelve (12) FLSA plaintiffs); *El Aalaoui v. Lucky Star Gourmet Deli Inc.,* 2021 WL 22787, at *1 (S.D.N.Y. 2021) (successfully vacating default judgment entered against FLSA defendants in the amount of $231,660); *Rivera v. Crabby Shack, LLC,* 2019 WL 8631861, at *5 (E.D.N.Y. 2019) (successfully arguing motion to enforce and approve settlement agreement on behalf of defendants)*; Pugh v. Meric*, 2019 WL 2568581, at *2 (S.D.N.Y. 2019) (post-bench trial order issued by the Hon. Judge Denise Cote, holding that the "wage notice penalty" in NYLL § 198(1)(1-b), by its very terms, does not mandate the imposition of damages); *Pugh v. Meric*, 2019 WL 3936748, at *5 (S.D.N.Y. 2019) (post-bench trial order reducing plaintiff's attorneys' fees award of $8,000 to $800); *Reyes v. The Picnic Basket, Inc.,* Case No. 18-cv-140, Dckt. No. 39, at *3-4 (S.D.N.Y. 2018) (successfully opposing Plaintiff's motion for conditional certification).

### III.     The Allocation for Attorneys' Fees and Costs is Reasonable.

Plaintiff bears the burden of proving the reasonableness of the fees sought. *See Savoie v. Merchs. Bank*, 166 F.3d 456, 463 (2d Cir. 1999). "Although courts may elect to award fees by considering either the lodestar method – the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended – or the percentage method – a percentage of the total amount recovered by the plaintiffs – '[t]he trend in [the Second] Circuit is toward the percentage method.'" *Perez v. Ultra Shine Car Wash, Inc*., 2021 WL 1964724, at *6 (S.D.N.Y. 2021) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005)). But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Id.* (citing *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)); *see also Guareno v. Vincent Perito, Inc.*, 2014 WL 4953746, at *2 (S.D.N.Y. 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015). The Court must also determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd*., 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012). Courts can and should exercise broad discretion in determining a reasonable fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The method for determining reasonable attorney's fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008). In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits. This is known as the "forum rule." *See Simmons v. New York City Transit Auth*., 575 F.3d 170, 174-175 (2d Cir. 2009). Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 190.

Plaintiff respectfully recommends an hourly rate of $450 for the services of Joshua D. Levin-Epstein ("Mr. Levin-Epstein"), and $350 for the services of Eunon Jason Mizrahi ("Mr. Mizrahi").[6] Other Courts have approved Mr. Levin-Epstein & Mr. Mizrahi's proffered billing rates. *See Dorson v. NYU Langone Hospital-Brooklyn,* Case No. 1:21-cv-04286-RER at 1/23/2023 Order (S.D.N.Y. 2023); *Christian v. MH Plumbing & Mechanical Corp. et al,* Case No. 1:22-cv-04774-BMC at Dckt. No. 21 at * 4 (E.D.N.Y. 2023); *Sims v. Crown Waste Corp. et al*, Case No. 1:22-cv-06047-BMC at Dckt. No. 23 at * 4 (E.D.N.Y. 2023); *Hernandez v. Yonkers Brewing Company LLC et al*, Case No. 7:21-cv-06951-PED at Dckt. No. 50 (S.D.N.Y. 2022); *Hoyos v. Milio et al,* Case No. 1:22-cv-01982-GWG at Dckt. No. 54 (S.D.N.Y. 2022); *Simmons v. Allied Universal Security Services, LLC et al*, Case No. 1:22-cv-03526-GHW at Dckt. No. 21 (S.D.N.Y. 2022); *Jones v. Questfleet LLC et al*, Case No. 1:21-cv-04042-TAM at 7/28/2022 Order (E.D.N.Y. 2022); *Stein v. Greenfeld et al,* Case No. 20-cv-01929-ARR-CLP, Dckt. No. 25 at *6-

---

[6] A true and correct copy of Plaintiffs' counsel's contemporaneous time and billing records, documenting each attorneys' hourly rate, hours expended, and tasks worked on, is annexed hereto as Exhibit "B".

7 (E.D.N.Y. 2020); *Laureano-Capellan v. Chirichella et al,* Case No. 20-cv-00360-RER, July 15, 2020 Dckt. Entry (E.D.N.Y. 2020); *Feliciano v. Yoon et al,* Case No. 18-cv-06361-DLI-JO, March 27, 2020 Dckt. Entry (E.D.N.Y. 2020). Such fees are also within the range of reasonable rates for similarly experienced attorneys. *See Guerra v. Trece Corp.,* 2021 WL 1893593, at *2 (S.D.N.Y. 2021) (approving hourly rate of $450 for partner); *Meide Zhang v. Liang Zhang*, 2020 WL 9256464, at *6 (S.D.N.Y. 2020), *report and recommendation adopted as modified sub nom. Zhang v. Zhang*, 2021 WL 1154084 (S.D.N.Y. 2021) (approving $450 hourly rate as "reasonable"); *Salazar v. 203 Lena Inc*., 2020 WL 5627118, at *11 (S.D.N.Y. 2020), *report and recommendation adopted,* 2020 WL 6257158 (S.D.N.Y. 2020) (recommending hourly rate of $500).

Applying the percentage method, Plaintiff respectfully requests an award of attorneys' fees in the amount of $43,186.53.

Plaintiff further requests an award of $440.41 for costs incurred in filing fees ($402) and travel expenses ($38.41). Proof of disbursements substantiating these fees are annexed hereto as Exhibit "C".

Based on this, the requested attorneys' fees and costs of $43,626.94 should be found reasonable and permitted. The parties respectfully request that the Court approve the settlement as fair and reasonable and So Order the proposed Stipulation to Dismiss the case.

## IV. The Agreement Satisfies All Other Factors Considered for Approval.

The terms of the Settlement Agreement are consistent with *Cheeks*. For example, the release in the Agreement is limited to wage-and-hour claims and there are no confidentiality or non-disparagement provisions, although there is a narrow "no publication" clause that prohibits Plaintiffs from contacting the media or posting about the settlement on social media. Plaintiffs and the undersigned believe that this is a reasonable, limited restriction necessary to implement the settlement. *See, e.g., Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. 2016) (holding that nondisclosure clause prohibiting contact with media or social media "is fair and…does not run afoul of the FLSA's remedial purposes").  The settlement was reached following arm's-length negotiations between counsel well-versed in wage-and-hour law and following an in-person Settlement Conference.

In sum, the settlement is fair and reasonable, providing Plaintiffs with a substantial recovery protected against the uncertainties and costs of trial, and should be approved by the Court.

We thank the Court for its time and consideration of this matter.

Respectfully submitted,

LEVIN-EPSTEIN & ASSOCIATES, P.C.

By: */s/ Jason Mizrahi*
    Jason Mizrahi, Esq.
    60 East 42nd Street, Suite 4700
    New York, NY 10165
    Tel. No.: (212) 792-0048
    Email: Jason@levinepstein.com
    *Attorneys for Plaintiffs*